Good morning, your honors. May it please the court, I'm James C. Angelson, and I represent Mr. Sheklin Someta and his daughter, Ms. Sesmira Someta. I would respectfully request two minutes. Whatever you like. Just do it. Now, the I.J. found Mr. Someta to be credible based on the I.J.'s examination of Mr. Someta's declaration. Mr. Counsel, I'm interested in the second beating. On the one hand, the person who did it is a chauffeur, as I recall, or bodyguard to a high government official. Yes, sir. On the other hand, as far as I can tell, he's indifferent to Someta's political opinion. What he's upset about is that Someta won't help him sneak the trucks full of contraband through. It's just persecution for not cooperating with me in a crime rather than persecution on account of political opinion. I think that's how the I.J. and the BIA saw it. Why should it be seen as persecution by reason of Someta's political opinion? First of all, your honor, the I.J.'s oral decision made findings that support a grant of asylum. The I.J.'s oral decision said here at 13, this second incident of August 2002, again, pretty clearly from the testimony, involved criminal activities and political corruption by basically thugs that may have been somehow connected with the government. And in his discussion of the well-founded fear, the court finds that. Well, he crossed out political. He said corruption. Okay. He crossed out. Now, I know you vote that against him. I had a summer when I was in law school, when I was a summer associate for a white tree firm in Boston. They made a point of having some crossout and interlineation on every document they sent out just as kind of a trademark to show that it had been subjected to a last review by a partner who had made corrections. I don't see why the indication basically that the I.J. read over his work, thought about it, and changed it by crossouts and interlineations goes against him. It seems to me it goes for him. It shows more attention to the outlier. No, Your Honor, because with all respect, this court has dealt with confusing opinions and has seen them. I don't see the confusion. Okay. What it tells me is when he dictated it, he said political, and when he read it over, he said. No, I don't think he was. But he had no jurisdiction to read that over and make the substantive change. I've made a motion to remand and motions for judicial coverage. What do you mean no jurisdiction? Because the judge can't read over his work. You do that on everything I do. I read it over and I change it. Under the 8 CFR, the notice of appeal was filed. The tapes go to the Board of Immigration Appeals for its transcription. Then the transcript is sent to the I.J. for his signature. And the immigration judge's bench book says to the I.J.'s, and I put that in my materials, that you cannot change the opinion. You can sign your name. Oh, you mean he interlineated it. I get it. What are they asking him to sign it for if he's not allowed to read it over and change it? The Board of Immigration Appeals practice manual indicates that jurisdiction passes to the Board of Immigration Appeals upon the filing of the notice of appeal. The notice of appeal was filed. Judge Posner said that it's bad form, once a judge realizes that the notice of appeal has been filed, to then change the text of the decision. He wrote that in the manual. You had this interlineated opinion, as I understand and read the sequence of events. You had this after the notice of appeal but before your briefs were filed. Is that correct? Yes, Your Honor. But you didn't make any objection to it in your briefs. And so I had a question about whether we even had jurisdiction to consider this argument since it wasn't exhausted before the BIA. Well, Your Honor, this was another lawyer. I did do a motion to remand. And in the motion to remand, I indicated that the issue, first of all, an issue can be raised by mention. And in here, the other lawyer indicated that the judge was wrong on the non-political, assignment on kind of political opinion. Second of all, this is a miscarriage of justice because the all decision contains, this was his finding of political persecution, of political corruption, supports a whistleblowing rationale under Padunian. Mr. Somera was a whistleblower. He investigated and he blocked corruption that was intertwined. But he didn't rule it right because his boss told him not to put it into the report and so he didn't, isn't that right? Well, the thing is his boss had already released the trust, which supports the inference that the boss had the instructions from someone higher up, the person who was supervising the smuggling operation. Mr. Mohori was the bodyguard for Fatos Nani, who was at that time chairman of the Socialist Party, and a week later, prime minister of Albania. He was in jail, Fatos Nani, and Nihat Kula, who also went after Mr. Somera's daughter to try to bring her into prostitution. They were in the same jail together, as one of the policemen explained to Mr. Somera, using this as a reason why he could not investigate. But so he identified the issue, he told his boss, his boss maybe was in the pocket or took a bribe and told him don't put it in the report, and then he didn't take any steps after that, right? He didn't report it, he didn't report it to someone, a supervisor of his boss. Well, Ferdinand says you don't have to go that far. Ferdinand says if you investigate and you are resisted and you're persecuted, during and in front, really, a confrontation with governmental corruption, I would like, or corruption intertwined with criminals in the government, if you just resisted and you're persecuted on account of that, that is persecution on account of clerical opinion. And here, the whole Albanian government was involved. He worked for the government. His boss cleared the trucks, and this is when Mr. Somera realized this had to do with smuggling, this operation. Fatos, the morore, was the by-guard for Fatos Nani. He drove up to the work site in a government car when he was with Mihai Kula, who later on came after Mr. Somera's daughter to bring her into prostitution. The police, he went to the police, he said, I want to report this. The policeman said, look, I'm not going to take these charges. I'm not going to make any case for you. Fiduniak filed a written complaint with the mayor. This fellow didn't. Well, Fiduniak thought by filing his written complaint he'd get some results. It was right in the middle of the extortion. This man did want to file his report to his boss, who was a government employer, a government employee, and his employer, a government man. Would you address the point as to why, since his wife and family live in another town in Albania, trouble-free, the finding of relocation possibility doesn't bar asylum? Well, Your Honor, I think that first of all, to address that, the wife and daughter were in February 2005. They had been receiving anonymous threatening calls. And then in February 2005, the wife got a call and asked for the husband. And she said, he's not here. And he said, you know, we know that. We know that he has another daughter here in Albania. They were referring to Claudia, who was luckily 13 or 14, 13, I think, at that time. And he's absolutely terrified of that. And the call was, did the call threaten the wife or the child? Well, the statement, in the context that it was made, an anonymous call, we know that Sheklim has, and, yeah, we'll make him pay good. We'll make him pay for it. We'll get, you know, we know he has another daughter still in Albania. To me, that's referring to what had happened earlier when Mohori went, I mean, I'm sorry, Mr. Kula, went after Besmira in an attempt to grab her into his prostitution ring, to hold her as hostage in order to coerce Mr. Sometica to go along with future schemes. But she wasn't made into a prostitute. That was a threat that they made, right? Well, this was, okay, I'm sorry, I'm going to back up here to 2002. What happened was, is that Mr. Sometica was told that Mr. Kula was in the neighborhood, and he had asked his neighbor, who was telling this to Mr. Sometica, where does Mr. Sometica live? And then he wanted to know what school the man was talking to, what school this man's daughter went to, in suggesting that he wanted to know where Besmira went to school. This was an attempt to kidnap her into prostitution, because as Mr. Sometica testified in his testimony, it's credible, so it's true. This man is notorious. He's a killer, and he is known for prostitution. I mean, as the State Department reports indicate, there is an interconnection between prostitution and government corruption in Albania. The police are sometimes found helping traffickers. Elias Zacharias says that the persecution has to be on account of the victim's political opinion, not the persecutor's. That's why I asked you those questions initially. I think the record establishes pretty well that this is a bad place to live, and that the government is extremely corrupt. And it sounds like all you've got to tie it to the statute is Fiduniak. But in Fiduniak, the guy made written complaints to the mayor, the governor, and the Supreme Soviet deputy. And this fellow didn't. He was not able to. He evinced or manifested a political opinion that he communicated to the political organ, saying, change your politics. Well, the thing is, is he testified that by being a member of the Democratic Party, he had no patron or protector. Do you have anything more than Fiduniak that's more comparable factually to this fellow? Well, there are the other corruption cases where what they're saying is any resistance to Fiduniak, on the bare fact that it refers to other cases where they're saying that any resistance to corruption intertwined with the government, that causes persecution. Now, for example, in Fiduniak, the people who beat him up twice, two of those occasions, they were not with the government. They were just cops. Okay. And the court found that that was all right. That still constitutes persecution on a protected ground. Thank you. Okay. Is that my time up? Yep. Yep. You're a few minutes over. We were interested in your answers, and we took you about two and a half, three minutes over. Good morning, Your Honors. May it please the Court. Bridget Martin for the Attorney General of the United States. It's a real problem figuring out these cases where it's sort of hard to separate what is government from what is crime. Yes, Your Honor. And in this case, the immigration judge found that the retaliation by thugs in this case was simply due to Mr. Salameda's refusal to tolerate corruption in Albania at the time. And this was retaliation for Mr. Salameda's performance of his job. As I recall, he wouldn't let the trucks full of contraband through his checkpoints. That's correct. And this is something that Mr. Salameda said in his declaration he had done numerous times in the three years that he had worked as a customs inspector. He had reported suspected contraband smuggling to his supervisor. He had not let it through. And it was just this one specific instance that he had trouble, where these thugs actually retaliated against him. What do you do where the main function of government in a country is to steal? And if you interfere with stealing, you're interfering with essential government functions. Well, Your Honor, the evidence on the record here doesn't show that there's a connection or that this was essential government function. In this case, the IG found that these were thugs that may have had some connection to the government. All I could get out of the material in the record was whoever has charge of the government gives out jobs and they steal, and whoever doesn't, doesn't have a job. Well, Your Honor, Mr. Salameda had been working at this job for three years. He had reported – They had a compromise between the Socialists and the Democrats. Which are the two largest political parties. He handed out two jobs to the Democrats. Well, and the reason that they had to do that is these are two – this is a multi-party system. This is not a case where you have one party that's extremely powerful and a second party that's extremely weak. And so there had to be a compromise where Democrats – They needed the Democrats in the coalition. Exactly, Your Honor. So why isn't – why isn't it political opinion when you don't go along with the program? Well, it may be in certain cases. It can be in whistleblowing cases. But this is not a whistleblowing case. In this case, the petitioner was acting within the scope of his duties. He did not report these smuggling outside the chain of command. He did not expose this corruption in a public way. And he was not – he was not directing his actions. I think you're pretty solid on the whistleblowing. I was asking a little bit different question. Okay. I'm sorry, Your Honor. Why isn't it persecution for political opinion if your political opinion is you're not effectively conducting the government program, which is to steal? Well, Your Honor, in this case, while there is noted on the record that there's widespread corruption, the evidence does not compel finding that this particular cigarette smuggling was a government act or was inexplicably intertwined with the government operations. Isn't there sufficient evidence to find that this is how the bodyguard was paid by the socialist premier? Go smuggle some things in and sell them, and that's how I pay you off. No, Your Honor. In fact, while a reasonable fact finder could have inferred based on the fact that he drove a car that had a government license plate and that he was a bodyguard of a socialist party member, that's not the standard here. The standard here is, is the evidence so compelling that no reasonable fact finder could have agreed with the immigration judge's finding that this was simply thugs who were retaliating for petitioner's performance of his job duties and not letting them through customs. If the government program is, say, to promote the arts by fostering the painting of murals on city buildings and somebody refuses, in America he may get fired or he may get transferred. In a bad country he might get persecuted. And here it looks to me as though the government program is smuggling and stealing and this fellow, instead of getting transferred or dismissed, got beat up. Well, Your Honor, sufficient evidence does not support the finding that this particular act of smuggling was not a government operation. Although widespread corruption may exist in Albania, we have to look at this particular instance and determine what the petitioner's actions were to deal with this. He did not try to expose it publicly. He did not go to the newspaper. He did not try to do anything outside his chain of command. And there is no evidence on the record, although petitioner argues in his brief that this was somehow connected to high levels of members of the socialist party, that evidence does not appear in this record. Can we consider that the IJA apparently made a substantive change to his opinion that it did at one point say political corruption? The immigration judge did make handwritten changes to his opinion. That's correct. However, these were clarifications rather than substantive changes. And, in fact, by crossing out the word political, the immigration judge merely sharpened his decision in order to make the issues clear and, in fact, broadened the definition so that corruption could include political corruption or other types of corruption that might be in Albania. But had the IJA found political corruption, would that also be supported by substantial evidence? Certainly it would be supported by substantial evidence. However, Your Honor, the burden that the petitioner has here is to show that the evidence is so compelling that no reasonable fact finder could find what the immigration judge found here. And, in fact, the changes that were made to cross out to political, not only were they authorized by law, but they were also, Your Honor, And that's what it comes down to, is that here he had the changes beforehand before he briefed his appeal to the board. There were no changes to his arguments, or the issue was not raised in his brief to the Board of Immigration Appeals. And, in fact, the petitioner has not been deprived of a chance to reasonably present his case. And his arguments wouldn't change regardless of whether the word political was crossed out or not, and they haven't. The daughter that the thugs said they were going to force into prostitution because this fellow didn't play ball with the crooks, is she in Albania now or in America? She's in America, Your Honor, now. She's 20 years old. And the trafficking threats against the daughter, those also were not based on political opinion because we're still back to the whole root of why threats against Mr. Selmedo were made and why the attacks on Mr. Selmedo were made. And to the extent that the ---- I don't think I ever got my question across on that. Different countries have different notions of what's political. For example, having two or three kids in America is not political. It has nothing to do with politics. You have as many or as few kids as you want. In China, under the one-child policy, it's political. And the government may attribute a political opinion of opposition to the one-child policy, or they may think it was just carelessness if somebody has a second child. And what I was thinking was governments have different notions. How many children you have may be politics in China and not here, and participating in crime may be politics in Albania and not here. Yes, Your Honor, that could be the case. However, in the cases where this Court has found that politics and corruption are inextricably intertwined, those have had specific facts on the record of those cases. I'm thinking of the Segedia case, for example, where there was new reform in the Ukraine, and actually, in that case, the petitioner's attempts to expose corruption were tied in at the root to the Ukrainian government and these changes that were made. In that case, for example, the asylum seeker actually took an oath, a new oath, at his job, saying that he was trying to rebuild this type of corruption. And so there was evidence on the record in that case that the asylum seeker's job was inextricably intertwined to the very roots of the political system there. In this case, we have in Albania widespread corruption, but we don't have the same ties to the very roots of the government that we do in those other types of cases. Your Honor, thank you, Your Honors. For the reasons expressed, the Attorney General asks that, respectfully requests that the Court deny both petitioners' motions for review. Thank you. As Stelmita v. Olson is submitted and United States v. Ayala Boros is submitted, we'll hear United States v. Fidler. Thank you.
judges: Kleinfeld, Bea, Ikuta